# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

-------------------------------------------------------------- x

KOK HAUT SEOW
     a/k/a Calvin Seow,
JISOO KIM, and
NAE KYONG YOM,
*on behalf of themselves, the proposed FLSA Collective,*
*and the putative Rule 23 Class,*

|  |  |
|---|---|
| Plaintiffs, | Case No. 19-cv-02692-JNE-DTS |
| v. | 29 U.S.C. § 216(B) COLLECTIVE ACTION AND FED. R. CIV. P. 23 |

MIYABI INC.
     d/b/a Miyabi,
LIN SUSHI INC.
     d/b/a Miyabi,
CHER LEONG YONG
     a/k/a Stanley Yong,
ZHONGZI ZHEN
     a/k/a Nick Zhen
     a/k/a Zhongzi Zheng
     a/k/a Nick Zheng,
KEVIN YONG
     a/k/a Kevin Yang
     a/k/a Guo Zhong Yong
     a/k/a Guo Zhong Yang, and
YOUYAN CHEN
     a/k/a Ken Chen,

CLASS ACTION

FIRST AMENDED COMPLAINT

                               Defendants.

-------------------------------------------------------------- x

Plaintiffs KOK HAUT SEOW a/k/a Calvin Seow, JISOO KIM, and NAE KYONG YOM, (hereafter referred to as "Plaintiffs"), on behalf of themselves and other similarly situated (the FLSA Collective"), and on behalf of the members of the proposed Rule 23 Class ("the rule 23 Class") by and through their attorneys, Daniel J. Cragg, ECKLAND & BLANDO LLP, and Troy Law, PLLC, hereby bring this First Amended complaint[1] against Defendants MIYABI INC. d/b/a Miyabi, LIN SUSHI INC. d/b/a Miyabi, CHER LEONG YONG a/k/a Stanley Yong, ZHONGZI

---

[1] Plaintiffs are amending the Complaint once as a matter of course pursuant to Fed. R.Civ. P. 15(a)(1)(A).

ZHEN a/k/a Nick Zhen a/k/a Zhongzi Zheng a/k/a Nick Zheng, KEVIN YONG a/k/a Kevin Yang a/k/a Guo Zhong Yong a/k/a Guo Zhong Yang, and YOUYAN CHEN a/k/a Ken Chen, ("Defendants") for damages and other relief relating to violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. §177.21, *et seq.*, and allege as follows:

## PRELIMINARY STATEMENT

1.    Defendants regularly engaged in unlawful pay practices, including failure to pay Plaintiffs and similarly situated employees at the minimum wage for some or all hours worked, failure to pay overtime, and retention of tips in violation of both the FLSA and the MFLSA.

2.    Defendants' pay violations amount to a willful pattern, policy, and practice of unlawful conduct.

3.    Plaintiffs assert claims on behalf of themselves and other similarly situated nonexempt employees who were or are employed by Defendants and not provided with proper overtime compensation for their overtime hours worked at any time from three years prior to the filing of this Complaint. Plaintiffs seek to represent both an FLSA collective and a Rule 23 Class in prosecuting these claims.

## PARTIES

### *Plaintiff KOK HAUT SEOW a/k/a Calvin Seow*

4.    Plaintiff KOK HAUT SEOW a/k/a Calvin Seow is an adult resident of the State of Minnesota.

5.    Plaintiff KOK HAUT SEOW a/k/a Calvin Seow was employed by Defendants to work as a sushi chef at "Miyabi" located at 400 Water Street, Suite 100, MN 55331 during three periods of employment:

a.    From on or about October 1, 2015 through on or about July 15, 2017;

2

b.      From on or about September 16, 2017 through on or about January 31, 2018; and

c.      From on or about February 14, 2018 through February 2, 2019.

**Plaintiff JISOO KIM**

6.      Plaintiff JISOO KIM is an adult resident of the State of Minnesota.

7.      Plaintiff JISOO KIM was employed by Defendants to work as a server at "Miyabi" located at 400 Water Street, Suite 100, MN 55331 from August 2, 2015 through June 29, 2019.

**Plaintiff NAE KYONG YOM**

8.      Plaintiff NAE KYONG YOM is an adult resident of the State of Minnesota.

9.      Plaintiff NAE KYONG YOM was employed by Defendants to work as a server at "Miyabi" located at 400 Water Street, Suite 100, MN 55331 from August 18, 2015 through June 29, 2019.

**Defendant MIYABI INC. d/b/a Miyabi**

10.     Defendant MIYABI INC. d/b/a Miyabi was during the period relevant to this lawsuit a corporation organized in the State of Minnesota with a principal address at 400 Water Street, Suite 100, MN 55331.

11.     Throughout its operation, upon information and belief, MIYABI INC. d/b/a Miyabi was engaged in interstate commerce and had gross annual sales in excess of $500,000.00.

12.     Throughout its operation, upon information and belief, MIYABI INC. d/b/a Miyabi purchased and sold goods moved in interstate commerce, and employees of MIYABI INC. d/b/a Miyabi, including Plaintiffs, handled goods moved in interstate commerce including ingredients, cleaning supplies, hard drinks, and soft drinks.

***Defendant LIN SUSHI INC. d/b/a Miyabi***

13.    Defendant LIN SUSHI INC. d/b/a Miyabi is, and was during the period relevant to this lawsuit, a corporation organized in the State of Minnesota with a principal address at 400 Water Street, Suite 100, MN 55331.

14.    Throughout its operation, upon information and belief, LIN SUSHI INC. d/b/a Miyabi was engaged in interstate commerce and had gross annual sales in excess of $500,000.00.

15.    Throughout its operation, upon information and belief, LIN SUSHI INC. d/b/a Miyabi purchased and sold goods moved in interstate commerce, and employees of LIN SUSHI INC. d/b/a Miyabi, including Plaintiffs, handled goods moved in interstate commerce including ingredients, cleaning supplies, hard drinks, and soft drinks.

***Defendant CHER LEONG YONG a/k/a Stanley Yong***

16.    Defendant CHER LEONG YONG a/k/a Stanley Yong was during the period relevant to this lawsuit a 30% shareholder of MIYABI INC. d/b/a Miyabi, a 30% shareholder of LIN SUSHI INC. d/b/a Miyabi, the registered agent for LIN SUSHI INC. d/b/a Miyabi, and an active manager and the head chef at "Miyabi," who had the power to hire and fire employees, controlled employee work schedules and conditions of employment, determined employee rates of pay, and kept business records related to employees at "Miyabi."

17.    CHER LEONG YONG a/k/a Stanley Yong hired Plaintiffs KOK HAUT SEOW a/k/a Calvin Seow and JISOO KIM.

18.    CHER LEONG YONG a/k/a Stanley Yong fired Plaintiff KOK HAUT SEOW a/k/a Calvin Seow.

19.    CHER LEONG YONG a/k/a Stanley Yong set the schedule of Plaintiff KOK HAUT SEOW a/k/a Calvin Seow.

20.     CHER LEONG YONG a/k/a Stanley Yong paid Plaintiffs KOK HAUT SEOW a/k/a Calvin Seow and JISOO KIM.

21.     CHER LEONG YONG a/k/a Stanley Yong is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, and is jointly and severally liable with MIYABI INC. d/b/a Miyabi and LIN SUSHI INC. d/b/a Miyabi.

### Defendant ZHONGZI ZHEN a/k/a Nick Zhen a/k/a Zhongzi Zheng a/k/a Nick Zheng

22.     Defendant ZHONGZI ZHEN a/k/a Nick Zhen a/k/a Zhongzi Zheng a/k/a Nick Zheng was during the period relevant to this lawsuit a 30% shareholder of MIYABI INC. d/b/a Miyabi, the Chief Executive Officer of MIYABI INC. d/b/a Miyabi, and a 30% shareholder of LIN SUSHI INC. d/b/a Miyabi, who had the power to hire and fire employees, controlled employee work schedules and conditions of employment, determined employee rates of pay, and kept business records related to employees at "Miyabi."

23.     ZHONGZI ZHEN a/k/a Nick Zhen a/k/a Zhongzi Zheng a/k/a Nick Zheng is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, and is jointly and severally liable with MIYABI INC. d/b/a Miyabi and LIN SUSHI INC. d/b/a Miyabi.

### Defendant KEVIN YONG a/k/a Kevin Yang a/k/a Guo Zhong Yong a/k/a Guo Zhong Yang

24.     Defendant KEVIN YONG a/k/a Kevin Yang a/k/a Guo Zhong Yong a/k/a Guo Zhong Yang was during the period relevant to this lawsuit a 25% shareholder of MIYABI INC. d/b/a Miyabi and a 25% shareholder of LIN SUSHI INC. d/b/a Miyabi who had the power to hire and fire employees, controlled employee work schedules and conditions of employment, determined employee rates of pay, and kept business records related to employees at "Miyabi."

25.     KEVIN YONG a/k/a Kevin Yang a/k/a Guo Zhong Yong a/k/a Guo Zhong Yang is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder,

and is jointly and severally liable with MIYABI INC. d/b/a Miyabi and LIN SUSHI INC. d/b/a Miyabi.

### Defendant YOUYAN CHEN a/k/a Ken Chen

26.     Defendant YOUYAN CHEN a/k/a Ken Chen was during the period relevant to this lawsuit a 15% shareholder of MIYABI INC. d/b/a Miyabi and a 15% shareholder of LIN SUSHI INC. d/b/a Miyabi who had the power to hire and fire employees, controlled employee work schedules and conditions of employment, determined employee rates of pay, and kept business records related to employees at "Miyabi."

27.     YOUYAN CHEN a/k/a Ken Chen is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, and is jointly and severally liable with MIYABI INC. d/b/a Miyabi and LIN SUSHI INC. d/b/a Miyabi.

## JURISDICTION AND VENUE

28.     This court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over Minnesota state law claims pursuant to 28 U.S.C. § 1367(a).

29.     Venue is proper in the District of Minnesota pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and the acts and omissions giving rise to the claims herein alleged took place in this district.

## STATEMENT OF FACTS

30.     Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

***Defendant LIN SUSHI INC. d/b/a Miyabi is a Successor Employer to MIYABI INC. d/b/a Miyabi; Alternatively, LIN SUSHI INC. d/b/a Miyabi and MIYABI INC. d/b/a Miyabi were Joint Employers***

31.     Throughout the period relevant to this lawsuit, "Miyabi" operated under that name, with the same menu, in the same premises, using the same food storage and preparation equipment and furnishings, with substantially the same staff (including Plaintiffs) performing the same tasks, and with the same owners and managers (including Defendants).

32.     At no time relevant to this lawsuit did "Miyabi" cease to operate or pause in its regular operation.

33.     "Miyabi" had a single system for recording hours worked by employees, including Plaintiffs, and for recording the performance of employees, including Plaintiffs Yom and Kim, as measured by sales generated and tips given by customers, which was in place and recorded information throughout the period relevant to this lawsuit regardless of which corporation operated the restaurant.

34.     Prior to on or about January 1, 2017, Plaintiffs received paychecks with the payor named as "Miyabi Inc."

35.     After on or about January 1, 2017, Plaintiffs received paychecks with the payor named as "Lin Sushi Inc."

36.     However, LIN SUSHI INC. d/b/a Miyabi was incorporated on, and began operating on or about, June 2, 2016.

37.     Furthermore, MIYABI INC. d/b/a Miyabi continued to operate through, and was not dissolved until, June 2, 2017.

38.     Defendants committed the following alleged acts knowingly, intentionally, and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

39.     Plaintiffs and similarly-situated employees work or worked for Defendants during the past three years.

40.     Defendants suffered and permitted Plaintiffs and similarly situated employees to regularly work without paying them for all hours worked and without paying overtime compensation for all overtime hours worked.

**_Plaintiff KOK HAUT SEOW a/k/a Calvin Seow_**

41.     From on or about October 1, 2015 through on or about July 15, 2017, and from on or about September 16, 2017 through on or about January 13, 2018, and from on or about February 14, 2018 through on or about June 30, 2018, Plaintiff KOK HAUT SEOW a/k/a Calvin Seow regularly worked about 73.75 hours per week:

      a.      From 10:00 to 22:30, 12.5 hours, on Mondays, Tuesdays, and Thursdays;

      b.      From 10:00 to 22:45, 12.75 hours, on Fridays;

      c.      From 11:00 to 22:00, 11 hours, on Saturdays and Sundays; and

      d.      Additionally, 1 hour of side work after the restaurant closed, 1 or 2 irregular days out of the week.

42.     From on or about July 1, 2018 through February 2, 2019, Plaintiff KOK HAUT SEOW a/k/a Calvin Seow regularly worked about 57.75 hours per week:

      a.      From 10:00 to 22:30, 12.5 hours, on Mondays, Tuesdays, and Thursdays;

      b.      From 10:00 to 22:45, 12.75 hours, on Fridays;

      c.      From 16:00 to 22:00, 6 hours, on Saturdays; and

      d.      Additionally, 1 hour of side work after the restaurant closed, 1 or 2 irregular days out of the week.

43.     Additionally, each day per week throughout his employment, Plaintiff KOK HAUT SEOW a/k/a Calvin Seow was required to drive other employees to and from work, for about 22 miles, taking about 30 to 45 minutes per day.

44.     Throughout his employment, Plaintiff KOK HAUT SEOW a/k/a Calvin Seow was given a putative rest break from 14:30 to 16:00 on Mondays, Tuesdays, and Thursdays, but during this time he was not free to leave the restaurant except to purchase supplies for the restaurant, and was required to answer customer phone orders.

45.     Defendants failed to any records of Plaintiff KOK HAUT SEOW a/k/a Calvin Seow's hours worked per week.

46.     Over the course of his employment, Plaintiff KOK HAUT SEOW a/k/a Calvin Seow was paid fluctuating semi-monthly rates, at most $2,292.00 for the second half of October 2015 and at least $307.00 for the second half of February 2018, but most often $1,900.00 per half month.

47.     For the second half of February, 2018, Plaintiff KOK HAUT SEOW a/k/a Calvin Seow's calculated hourly wage—calculated by multiplying his semi-monthly by 24 semi-months per year, dividing by 52 weeks per year, and further dividing by his hours worked in the applicable weeks—amounted to less than the federal minimum wage.

48.     For the second half of December 2017, the second half of February 2018, and the second half of October 2018, Plaintiff KOK HAUT SEOW a/k/a Calvin Seow's calculated hourly wage amounted to less than the Minnesota minimum wage.

49.     The fluctuations in Plaintiff KOK HAUT SEOW a/k/a Calvin Seow's pay rate were arbitrary and did not depend on the number of hours or days he worked in the half-month.

50.     At all times relevant to this lawsuit, Plaintiff KOK HAUT SEOW a/k/a Calvin Seow worked in excess of 40 hours per week, and in excess of 48 hours per week.

51.     Plaintiff KOK HAUT SEOW a/k/a Calvin Seow's semi-monthly pay did not include overtime.

52.     At no time during his employment was Plaintiff KOK HAUT SEOW a/k/a Calvin Seow exempt under federal and state laws requiring employers to pay employees overtime.

53.     Plaintiff KOK HAUT SEOW a/k/a Calvin Seow was required by the Defendants to participate in a tip pool, but the tip pool was contaminated. Specifically, the Defendants retained 10% of the tips generated by sushi chefs, servers and other tipped workers for themselves, and further retained an additional 3% of the tips generated as a credit card processing fee even though customers were given the impression that all tips would go to the employees.

### Plaintiff JISOO KIM

54.     From on or about August 7, 2015 through June 29, 2019, Plaintiff JISOO KIM was scheduled to work about 52 hours per week:

     a.     From 10:30 to 22:00, 11.5 hours, on Mondays, Wednesdays, Thursdays, and Fridays; and

     b.     From 16:00 to 22:00, 6 hours, on Saturdays.

55.     Throughout his employment, Plaintiff JISOO KIM was given a putative rest break from 14:30 to 16:00 on Mondays, Wednesdays, Thursdays, and Fridays, but during this time he was not free to leave the restaurant except to purchase supplies for the restaurant, and was required to answer customer phone orders.

56.     Plaintiff JISOO KIM's time records frequently show him working in excess of 40 hours and in excess of 48 hours per week, at most 56.75 hours per week.

57.     Additionally, 2 or 3 days per week, Plaintiff JISOO KIM was required to drive other employees to and from work, for about 15 miles, taking about 15 to 30 minutes per day.

58.     Defendants failed to keep full and accurate records of Plaintiff JISOO KIM's hours worked per week.

59.     Throughout his employment, Plaintiff JISOO KIM was paid for working 79 hours every half-month (that is, 36.92 hours per week), regardless of his actual time worked.

60.     In this way, Plaintiff JISOO KIM was denied straight-time pay for some of his hours worked for most of the weeks of his employment, and overtime pay for all the weeks of his employment.

61.     Throughout his employment, Plaintiff JISOO KIM was paid at a straight-time rate of $11.00 per hour.

62.     At no time during his employment was Plaintiff JISOO KIM exempt under federal and state laws requiring employers to pay employees overtime.

63.     Plaintiff JISOO KIM was required by the Defendants to participate in a tip pool, but the tip pool was contaminated. Specifically, the Defendants retained 10% of the tips generated by sushi chefs, servers and other tipped workers for themselves, and further retained an additional 3% of the tips generated as a credit card processing fee even though customers were given the impression that all tips would go to the employees.

***Plaintiff NAE KYONG YOM***

64.     From on or about August 8, 2015 through June 29, 2019, Plaintiff NAE KYONG YOM was scheduled to work about 57.5 hours per week: from 10:30 to 22:00, 11.5 hours, on Mondays, Wednesdays, Thursdays, Fridays, and Saturdays.

65.     Throughout his employment, Plaintiff NAE KYONG YOM was given a putative rest break from 14:30 to 16:00 on Mondays, Wednesdays, Thursdays, and Fridays, but during this

time he was not free to leave the restaurant except to purchase supplies for the restaurant, and was required to answer customer phone orders.

66.     Plaintiff NAE KYONG YOM's time records frequently show him working in excess of 40 hours and in excess of 48 hours per week, at most 60.42 hours per week.

67.     Additionally, 1 or 2 days per week, Plaintiff NAE KYONG YOM was required to drive other employees to and from work, for about 15 miles, taking about 15 to 30 minutes per day.

68.     Defendants failed to keep full and accurate records of Plaintiff NAE KYONG YOM's hours worked per week.

69.     Throughout his employment, Plaintiff NAE KYONG YOM was paid for working 79 hours every half-month (that is, 36.92 hours per week), regardless of his actual time worked.

70.     In this way, Plaintiff NAE KYONG YOM was denied straight-time pay for some of his hours worked for most of the weeks of his employment, and overtime pay for all the weeks of his employment.

71.     Throughout his employment, Plaintiff NAE KYONG YOM was paid at a straight-time rate of $9.86 per hour.

72.     At no time during his employment was Plaintiff NAE KYONG YOM exempt under federal and state laws requiring employers to pay employees overtime.

73.     Plaintiff NAE KYONG YOM was required by the Defendants to participate in a tip pool, but the tip pool was contaminated. Specifically, the Defendants retained 10% of the tips generated by sushi chefs, servers and other tipped workers for themselves, and further retained an additional 3% of the tips generated as a credit card processing fee even though customers were given the impression that all tips would go to the employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS

74.     Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

75.     Plaintiffs bring this action individually and as representatives on behalf of all other current and former non-exempt sushi chefs, servers and other restaurant workers who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "FLSA Collective").

## CLASS ACTION ALLEGATIONS

76.     Plaintiffs bring their Minnesota state law claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of themselves and all non-exempt personnel, including but not limited to sushi chefs, servers and other restaurant workers, employed by Defendants at any time three years before the filing of the Complaint through the entry of judgment (the "Class Period").

77.     All said persons, including Plaintiffs, are referred to herein as the "the Rule 23 Class."

78.     The Rule 23 Class members are readily ascertainable. The number and identity of the Rule 23 Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Rule 23 Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

79.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

80.     There are questions of law and fact common to the Rule 23 Class which predominate over any questions affecting only individual class members, including:

a.     Whether Defendants violated Minnesota law by failing to pay at least the minimum wage for all hours worked during a workweek;

b.     Whether Defendants violated Minnesota law by failing to pay overtime wages at one-and-one-half times the regular rate of pay for each hour worked over forty-eight (48) during a workweek;

c.     Whether Defendants violated Minnesota law by retaining some or all of the tips earned by the Rule 23 Class members;

d.     Whether Defendants maintained accurate records of the hours the Rule 23 Class members worked;

e.     The proper measure of calculation of damages; and

f.     Whether Defendants' actions were willful or in good faith.

*Typicality*

81.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Rule 23 Class, and the relief sought is typical of the relief that would be sought by each member of the Rule 23 Class in separate actions. All the Rule 23 Class members were subject to

the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Rule 23 Class member. Plaintiff and other Rule 23 Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

82.     Plaintiffs will fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent representing plaintiffs in both collective and class action and wage and hour employment litigation cases.

*Superiority*

83.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of wage and hour litigation, individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendants' policies and practices. There do not appear to be any difficulties in managing this class action.

**COUNT I.**
**[Violation of 29 U.S.C. §§ 203(m) And (t)—Unlawful Retention of Tips**
**Brought on Behalf of Plaintiffs and the FLSA Collective]**

84.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

85.     A tip is the sole property of the tipped employee regardless of whether the employer

15

takes a tip credit.

86.     The FLSA prohibits any arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer.

87.     Retaining portions of the tips from Miyabi employees to unjustly enrich MIYABI INC. d/b/a Miyabi, LIN SUSHI INC. d/b/a Miyabi, or their owners, using a portion of the tips to pay for unrelated expenses such as credit card processing fees, and using a portion of the tips to pay non-tipped employees, are prohibited under the FLSA.

## COUNT II.
### [Violation of 2018 Minn. Stat. § 177.24(2), (3)—Unlawful Retention of Tips & Unlawful Tip Pooling
### Brought on Behalf of Plaintiffs and the Rule 23 Class]

88.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

89.     A tip is the sole property of the tipped employee regardless of whether the employer takes a tip credit.

90.     The MFLSA prohibits any arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer.

91.     Retaining portions of the tips from Miyabi employees to unjustly enrich MIYABI INC. d/b/a Miyabi, LIN SUSHI INC. d/b/a Miyabi, or their owners, using a portion of the tips to pay for unrelated expenses such as credit card processing fees, and using a portion of the tips to pay non-tipped employees, are prohibited under the MFLSA.

92.     Additionally, Defendants required Miyabi employees, including Plaintiffs, contrary to the explicit prohibition of involuntary tip pooling by the MFLSA.

## COUNT III.
### [Violation of 29 U.S.C. § 206—Nonpayment of Minimum Wage
### Brought on Behalf of Plaintiffs and the FLSA Collective]

93. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

94. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the similarly situated collective action members, for some or all of the hours they worked.

95. The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

96. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Members.

## COUNT IV.
### [Violation of 2018 Minn. Stat. § 177.24(1)—Nonpayment of Minimum Wage
### Brought on Behalf of Plaintiffs and the Rule 23 Class]

97. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

98. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the similarly situated collective action members, for some or all of the hours they worked.

99. The MFLSA provides that any employer who violates the provisions of 2018 Minn. Stat. § 177.24(1) shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages. 2018 Minn.

Stat. § 177.27(8)

100.    Defendants knowingly and willfully disregarded the provisions of the MFLSA as evidenced by failing to compensate Plaintiffs and Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Class Members.

## COUNT V.
### [Violation of 29 U.S.C. § 207—Nonpayment of Overtime Brought on Behalf of Plaintiffs and the FLSA Collective]

101.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

102.    The FLSA requires that employers pay non-exempt employees no less than one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) in a workweek. 29 U.S.C. § 207.

103.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

104.    Defendants are an "enterprise" within the meaning of 29 U.S.C. § 2062(r)(1), and are engaged in commerce within the meaning of the FLSA §§ 203(b) and (s)(1).

105.    Plaintiffs and the FLSA Collective qualify as non-exempt covered employees during the relevant time period. 29 U.S.C. § 203(e)(1).

106.    Defendants knew or should have known that Plaintiffs and the FLSA Collective worked overtime without proper compensation, and willfully failed to pay Plaintiffs and the FLSA Collective wages at the required overtime rates established by 29 U.S.C. § 255.

107.    As a direct and proximate result of these unlawful practices, Plaintiffs and the FLSA Collective suffered and continue to suffer wage loss and are entitled to recover unpaid

overtime wages for up to three years prior to the filing of their claims, liquidated damages or prejudgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

108.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and FLSA Collective at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and FLSA Collective.

**COUNT VI.**
**[Violation of 2018 Minn. Stat. § 177.21—Nonpayment of Overtime**
**Brought on Behalf of Plaintiffs and the Rule 23 Class]**

109.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

110.    The MFLSA requires employers to pay their employees no less than one and one-half times their regular hourly rate of pay for all hours worked in excess of forty-eight (48) during a workweek. Minn. Stat. §177.25.

111.    Plaintiffs and the Class Members qualified as non-exempt covered employees during the relevant time period. MFLSA, Minn. Stat. §§ 177.23 and 177.24.

112.    Plaintiffs and the Class Members worked more than forty-eight (48) hours per week for Defendants, but Defendants did not properly compensate Plaintiff and the Class Members with an overtime premium as required by the MFLSA.

113.    Defendants knew or should have known that Plaintiffs and the Class Members worked overtime without proper compensation and it willfully failed and refused to pay Plaintiffs and the Rule 23 Class wages at the required overtime rates. *See* Minn. Stat. § 541.07.

114.    Defendants' willful failure to pay Plaintiffs and the Class Members for overtime worked violates the MFLSA.

115. As a direct and proximate result of these unlawful practices, Plaintiff and Class Members suffered and continue to suffer wage loss and are entitled to recover unpaid back wages for up to three years prior to the filing of the Complaint, liquidated damages or prejudgment interest, attorney's fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## COUNT VII.
### [Violation of 29 U.S.C. 201 et seq.; 29 CFR 531.35—Unlawful Kickbacks Brought on Behalf of Plaintiffs and the FLSA Collective]

116. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

117. Throughout the period covered by the applicable statute of limitations, defendants have knowingly taken unlawful kickbacks in violation of FLSA and the supporting regulations of the U.S. Department of Labor. Specifically, Defendants required Plaintiffs to operate motor vehicles for Defendants' benefit and did not pay Plaintiffs for their time operating said vehicles or for their miles driven.

118. This kickback brings Plaintiffs' hourly minimum wages below the hourly federal minimum wage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a. Certification of this action as a collective action on behalf of the FLSA Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to those similarly situated apprising them of the pendency of this action, and permitting them to assert timely

FLSA claims in this action by filing individual consent forms pursuant to 29 U.S.C. § 216(b);

      b.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Rule 23 Class and the appointment of Plaintiffs as Class Representatives and their counsel as Class Counsel;

      c.      Judgment against Defendants finding that the practices complained of herein are unlawful under the FLSA and MFLSA;

      d.      An award of unpaid back wages due under FLSA and MFLSA due Plaintiffs and the FLSA Collective and Rule 23 Class members; and

      e.      An award of liquidated damages, pre and post judgment interests, attorneys' fees and costs incurred in prosecuting this action, civil penalties and/or other available and further relief that the Court deems just and equitable.

Dated: November 7, 2019
      Flushing, NY

ECKLAND & BLANDO

/s/ Daniel J. Cragg
Daniel J. Cragg, Esq.
800 Lumber Exchange
10 S 5th Street
Minneapolis, MN 55402
Tel: 612-236-0160
dcragg@ecklandblando.com

TROY LAW, PLLC

/s/ John Troy
John Troy, Esq.
41-25 Kissena Boulevard
Suite 119

Flushing, NY 11355
Tel: 718-762-1324
troylaw@troypllc.com

*Attorneys for the Plaintiffs, proposed FLSA
Collective Plaintiffs, and proposed Class*